**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF ARKANSAS**
**WESTERN DIVISION**

**DERRICK and ANITA SEYMORE;**
**SHANE SMITH; THADDEUS and**
**KAY WINTERS; BRIAN and STEPHANIE**
**PARKER; KEITH GRIFFIN;**
**ARNOLD and SHELLY FELBERMAYER;**
**JAMES and NORMA TAYLOR;**
**GENE and EMMA ADAMS;**
**CONNIE and STEWART KIRBY;**
**GREGORY HORNESS; and**
**ANTHONY and SHERRY HEALY;**
**LINDA CRIDER; JOHNATHAN and**
**RENEE GORDON;**                                                     **PLAINTIFFS**

**vs.**                          **CASE NO.:  4:10-cv-239 BSM**

**UNION PACIFIC RAILROAD COMPANY**                          **DEFENDANT**

**DEFENDANT'S BRIEF IN SUPPORT OF ITS MOTION IN LIMINE**

For the reasons outlined below, Plaintiffs should be precluded from introducing evidence,

and their counsel should be prohibited from arguing to the jury or implying in questions to

witnesses, matters related to the following:

**I.   Evidence that is more prejudicial than it is probative**

    **A.   *Profits over safety***

Any statements by Plaintiffs or their counsel that Defendant puts profits over safety

would be prejudicial and should be excluded.  *See* Fed. R. Evid. 403.

    **B.   *Testimony that a blocked railroad trestle in Jacksonville caused flooding***

Plaintiff Greg Horness testified in his deposition that a co-worker told him that a railroad

trestle was blocked in Jacksonville and caused flooding to the co-worker's front yard.  *See* Ex.1

[G. Horness 47-48].  This testimony is hearsay and should be excluded on that ground. Fed. R.

Evid. 802.  Second, whether a trestle was blocked in Jacksonville is not relevant to the issues in

this case and the testimony should excluded by Rule 402.  Finally, this testimony is unduly

prejudicial to Union Pacific and should be excluded by Rule 403.

**C.**     ***Testimony that Union Pacific threatened the City of Beebe or admitted liability to the City of Beebe should be excluded***

On three separate occasions after the 2009 floods, the City of Beebe met with employees

of the railroad to discuss the flooding.  *See* Ex. 2 [McKenna Depo. 85-86]. Defendant anticipates

that Plaintiffs will attempt to introduce evidence that a railroad official said to Mayor Robertson

that if the City paid the railroad $3 million dollars, the railroad would open more trestles. *See* Ex.

3 [Robertson Depo. 102].   Plaintiffs contend that this testimony is "both a threat and an

admission against interest." *See* Doc. # 46, page 11.   First, even though the meetings were

attended by other individuals representing both the City of Beebe and the railroad, no one has

corroborated the Mayor's testimony.   Second, the statement is devoid of probative value and

should be excluded by Rule 402 and 403.

Almost immediately after the December 2009 flood, Mayor Robertson began blaming the

railroad.  *See* Ex. 4 [Daily Citizen Article].  The purpose of the meetings between the City and

the railroad was to discuss the flooding.  That the railroad may have offered to add trestles if the

City of Beebe paid for them is not relevant to whether the railroad is liable to Plaintiffs for the

flooding.  It was simply an attempt to reach a compromise with the Mayor.

Relevant evidence is that which has "any tendency to make the existence of any fact that

is of consequence to the determination of the action more probable or less probable than it would

be without the evidence." Fed. R. Evid. 401.  Evidence that is not relevant must be excluded.

Fed. R. Evid. 402. These discussions do not make it more or less likely that Union Pacific was

negligent; they do not make causation more or less likely; and they do not support or refute

Plaintiffs' claims for damages.  Since the evidence is not relevant to any fact in issue in the case, the statements must be excluded under Rule 402.

The real purpose behind Plaintiffs' attempt to introduce this evidence is to paint Union Pacific as a corporation that puts money and profits above public safety. The prejudicial value of the statement is precisely why Plaintiffs will attempt to introduce it. The Mayor testified that he was offended at the railroad's arrogance.  *See* Ex. 3 [Robertson Depo. 56].  Plaintiffs hope that statement will evoke the same reaction from the jury.  Therefore, any testimony or argument that Union Pacific threatened the City of Beebe or admitted liability to the City of Beebe should also be excluded under Rule 403.

These discussions may also be construed as subsequent remedial measures or settlement negotiations and should be excluded under Rule 407 and 408.  There is a strong social policy in favor of taking steps in furtherance of added safety and to settle disputes.  *See* Fed. R. Evid. 407 & 408 committee notes 1972.  These discussions were a preliminary step in exploring those options.

## II. Plaintiffs' opinion testimony

This Court should exclude lay opinions on the cause of the flooding; the size or adequacy of the trestles; the value or diminution in value of Plaintiffs' properties; Stewart Kirby's legal opinions; and opinions on the cost to repair.  The admissibility of lay opinions is determined by Fed. R. Evid. 701. Under this rule, lay opinions shall be excluded unless the party offering the opinion can show that the opinion is:

(a)   rationally based on the perception of the witness,

(b)   helpful to a clear understanding of the witness' testimony or the determination of a fact in issue, and

(c)   not based on scientific, technical, or other specialized knowledge within the scope of Rule 702.

A lay person must have personal knowledge of the matters to which he testifies in order to submit his opinion to the court. Fed. R. Evid. 602. Rule 701 only permits lay opinions when the opinions or inferences are based upon the witness' personal observation and recollection of concrete facts and those facts "cannot be described in sufficient detail to adequately convey to the jury the substance of the testimony." *Wactor v. Spartan Transp. Corp.*, 27 F.3d 347, 350 (8th Cir. 1994) (quoting *United States v. Jackson*, 688 F.2d 1121, 1124 (7th Cir. 1982). Therefore, a lay witness may only testify as to facts within his or her range of general knowledge, experience and perception. *United States v. Espino*, 317 F.3d 788, 797 (8th Cir. 2003).

### A.    *Plaintiffs' opinions on the cause of the floods should be excluded*

Arkansas courts have long held that laymen cannot opine on issues of hydrology or the cause of floods. In *Kansas City, Ft. S. & M. R. Co. v. Cook*, 57 Ark. 387, 21 S.W. 1066 (1893), the plaintiff alleged that the railroad removed a trestle and constructed a permanent embankment in its place which caused his land to flood. *Id.* at 387, 21 S.W. at 1068. At trial, the plaintiff testified that the railroad's removal of the trestle and construction of the embankment caused Cypress slough to back up and flood his land. *Id.* The Arkansas Supreme Court reversed the jury's verdict in favor of the plaintiff and held that the issue of causation of flooding required expert testimony. Because Plaintiff did not have expert testimony on causation, he failed to meet his burden of proof.

Federal courts have reached the same conclusion in cases governed by the Federal Rules of Evidence. *Herriman v. U.S.*, 8 Cl. Ct. 411 (1985) (ruling in a pretrial conference that lay testimony would not be probative of causation of flooding); *Cox v. Tennessee Valley Authority*, 989 F.2d 499 (6th Cir. 1993) ("[C]ausation of flooding is a complex issue which must be addressed by experts."); *Alost v. U.S.*, 73 Fed.Cl. 480 (2006) (holding that lay testimony on

causation is entitled to little weight); *Hendricks v. U.S.*, 14 Cl.Ct. 143 (1987) (holding that lay testimony is not probative of causation in a flood case). In *Hendricks v. U.S.*, the plaintiffs alleged that the Army Corps of Engineers was operating the Harry S. Truman Dam and Reservoir in a way that exceeded the scope of various "flowage easements" and flooded their land. *Hendricks* at 148. At trial, the plaintiffs did not produce any expert testimony on causation. The court held, "[c]ausation of flooding is a complex issue which must be addressed by the experts." *Id*. at 159. The court concluded that without expert testimony as to the cause of flooding, the plaintiffs failed to meet their burden of proof. *Id*. at 156.

Other state courts follow the rule recognized in Arkansas that expert testimony on causation is required in flood cases. In *Davis v. Mebane*, 512 S.E.2d 450 (Ct. App. N.C. 1999), the plaintiffs sued the owner and designer of a dam, alleging that flooding to the plaintiffs' land was caused by the negligent design and location of the dam. *Id*. at 451. Defendants successfully excluded the opinions of the plaintiffs' causation experts on a Daubert challenge. *Id*. The trial court then granted the defendants' motion for summary judgment. *Id*. at 452. On appeal, the court upheld the Summary Judgment because only an expert could give a competent opinion on the cause of the flooding. *Id*.

In this case, no Plaintiff is an expert in hydrology and no Plaintiff saw the trestles before or during the flood events. If they have an opinion, they did not form it based on expertise or first hand knowledge, they formed their opinions based on what they were told by Mayor Robertson and Milton McCullar. Therefore, under Rules 701, 702, and 803, all Plaintiffs should be prevented from offering opinion testimony on the cause of the floods.

Plaintiff Emma Adams offered an opinion that the trestles were stopped up and that contributed to the flooding. *See* Ex. 5 [E. Adams 17]. She admitted that she had no personal

knowledge that they were stopped up but she had heard "rumor" that they were.  *See* Ex. 5 [E. Adams 18-19]. Therefore, here opinions on the cause of the flood should be excluded under rule 701, 702 and 802.

Plaintiff Gene Adams has no personal knowledge of the trestles being blocked or clogged. *See* Ex. 6 [G. Adams 14-15].  Therefore, his opinions on the cause of the flood should be excluded by Rule 701 and 702.

Plaintiff Laura Crider testified that she has no personal knowledge of the trestles being blocked or clogged.  *See* Ex. 7 [L. Crider 53]. She also testified that she has no opinion as to the cause of the flood. *See* Ex. 7 [L. Crider 77].  Therefore, she should be prevented from offering an opinion on the cause of the flood at trial under Rule 701 and 702.

Plaintiff Arnold Felbermeyer was told by Milton McCullar and Mayor Robertson that the flooding was caused by the railroad.  *See* Ex. 8 [A. Felbermeyer 59].  He has no personal knowledge of the trestles. *See* Ex. 8 [A. Felbermeyer 25].  Therefore, he should be prevented from offering an opinion on the cause of the flood under Rule 701, 702, and 803.

Plaintiff Shelly Felbermeyer has no first hand knowledge of the bridges or trestles. *See* Ex. 9 [S. Felbermeyer 21].  She expressed no opinion on the cause of the flood.  Therefore,   she should be prevented from offering an opinion on the cause of the flood at trial under Rule 701 and 702.

Plaintiff Jonathan Gordon does not attribute the floods to Union Pacific.  *See* Ex. 10 [J. Gordon 51].  He has no personal knowledge of the railroad trestles. *See* Ex. 10 [J. Gordon 43]. Therefore, under Rule 701 and 702, he should be prevented from offering an opinion at trial that Union Pacific caused the flooding.

Plaintiff Renee Gordon testified that she thought the railroad was acting as a dam and holding the water back.  *See* Ex. 11 [R. Gordon 59]. She is not qualified to offer this opinion and it should be excluded by Rule 701 and 702.

Plaintiff Keith Griffin opined that one trestle is not enough to carry away the water.  *See* Ex. 12 [K. Griffin 50].  He based his opinion on "country boy" knowledge.  *See* Ex. 12 [K. Griffin 51-52].  Since he is not qualified to offer an opinion on the cause of the floods, his opinions on the cause of the floods should be excluded by Rules 701 and 702.

Plaintiff Anthony Healy was told by Mayor Robertson that the railroad was the cause of the flood.  *See* Ex. 13 [A. Healy 47-48].  He admitted that he has no first hand knowledge of the bridges or trestles.  *See* Ex. 13 [A. Healy 51]. And he also admitted that he is not an expert in hydrology. *See* Ex. 13 [A. Healy 68].  Therefore, pursuant to Rules 701, 702 and 802, the Court should prohibit him from offering an opinion as to the cause of the flood at trial.

Plaintiff Sherrie Healy never offered an opinion on the cause of the flood.  She did admit that the does not have any first hand knowledge of the bridges or trestles.  *See* Ex. 14 [S. Healy 27].  Therefore, she should be prevented from offering an opinion on the cause of the flood at trial under Rule 701 and 702.

Emily Roberts, mother of Plaintiff Greg Horness and formerly his attorney-in-fact for financial purposes, testified that she has no first hand knowledge of the bridges or trestles.  *See* Ex. 15 [E. Roberts 41].  She never expressed an opinion about the cause of the flood.  Therefore, she should be prevented from offering an opinion on the cause of the flood at trial under Rule 701 and 702.

Plaintiff Greg Horness implied that the flooding was caused by the railroad.  *See* Ex. 1 [G. Horness 52].  In his deposition, he admitted that he has no first hand knowledge of the

trestles or bridges.  *See* Ex. 1 [G. Horness 58].  Therefore, pursuant to Rule 701 and 702, the Court should prohibit him from offering an opinion on the cause of the flood at trial.

Plaintiff Connie Kirby, in her deposition, opined that Union Pacific caused the flood by failing to keep its track and trestles clean.  *See* Ex. 16 [C. Kirby 29].  However, she admitted that she has no first hand knowledge of the trestles.  *See* Ex. 16 [C. Kirby 10]. Therefore, pursuant to Rules 701, 702 and 802, she should be prevented from testifying about the cause of the floods.

Plaintiff Stewart Kirby, in his deposition, offered the opinion that the railroad caused the flood by creating a fishbowl.  *See* Ex. 17 [S. Kirby 164].  He also described the railroad as a dam.  *See* Ex. 17 [S. Kirby 74].  Kirby was told by Milton McCullar and Mayor Robertson that the railroad caused the floods. *See* Ex. 17 [S. Kirby 61 & 69].  Kirby admitted that he has no knowledge of the condition of the trestles before or during the floods. *See* Ex. 17 [S. Kirby 170]. He also admitted that he is not a hydrologist. *See* Ex. 17 [S. Kirby 61]. Therefore, Kirby should be prevented from offering an opinion on the cause of the floods pursuant to Rules 701, 702, and 802.

Plaintiff Jeffery Mesko opined that flooding in Windwood Meadows was caused because the railroad was not draining properly.  *See* Ex. 18 [J. Mesko 72]. He has no firsthand knowledge of the trestles.  *See* Ex. 18 [J. Mesko 59].  He has been told by Milton McCullar and Mayor Robertson that the railroad is to blame for the flooding. *See* Ex. 18 [J. Mesko 53 & 55]. Therefore, his opinions should be excluded pursuant to Rule 701, 702, and 802.

Plaintiff Sarah Mesko expressed no opinion on the cause of the flooding. *See* Ex. 19 [S. Mesko 31].  She has no first knowledge of the trestles. *See* Ex. 19 [S. Mesko 11, 23]  Therefore, the Court should prevent her from offering an opinion on the cause of the floods under Rule 701 and 702.

8

Plaintiff Stephanie Parker has no first hand knowledge of the bridges or trestles. *See* Ex. 20 [S. Parker 41]. She expressed no opinion on the cause of the flooding.  Therefore, under Rule 701 & 702, she should be prevented from offering an opinion as to the cause of the flood at trial.

Plaintiff Brian Parker has no first hand knowledge of the trestles.  *See* Ex. 21 [B. Parker 51-52]. He expressed no opinion on the cause of the flooding.  Therefore, under Rule 701 & 702, he should be prevented from offering an opinion as to the caused of the flood at trial.

Plaintiff Anita Seymore was told by Milton McCullar that the flooding was caused by the railroad trestles.  *See* Ex. 22 [A. Seymore 16]. She has no first hand knowledge of the trestles. *See* Ex. 22 [A. Seymore 16]. She expressed no opinion on the cause of the floods.  Therefore, under Rule 701, 702 and 802 she should be prevented from offering an opinion on the cause of the floods at trial.

Plaintiff Derrick Seymore did not offer an opinion on the cause of the floods.  He has no firsthand knowledge of the trestles. *See* Ex. 23 [D. Seymore 48, 60-61].  He was told by Milton McCullar that the railroad trestles caused the flood. *See* Ex. 23 [D. Seymore 60].  Therefore, under rule 701, 702, and 802, he should be prohibited from offering an opinion on the cause of the floods at trial.

Plaintiff Shane Smith testified that the flooding could be caused by the railroad, beaver dams or by runoff.  *See* Ex. 24 [S. Smith 48].  That testimony is based entirely on hearsay.  *See* Ex. 24 [S. Smith 48].  He was told by Mayor Robertson that the flooding was caused by the railroad trestles. *See* Ex. 24 [S. Smith 49].  Milton McCullar also told him that the railroad was at fault. *See* Ex. 24 [S. Smith 54]. Therefore, under Rule 701, 702, and 802, he should be prevented from testifying at trial as to the cause of the flooding.

Plaintiff Brian Stroud has never seen the trestles. *See* Ex. 25 [B. Stroud 15-17]. He admits he has no training in determining the cause of floods. *Id.* Yet, he says the railroad created a dam. *See* Ex. 25 [B. Stroud 58].  Since, he does not have the background required to opine on the cause of floods, and since he has no first hand knowledge, his opinion should be excluded under Rule 701 and 702.

Plaintiff James Taylor opined that the railroad caused the flood. *See* Ex. 26 [J. Taylor 40]. He has no first hand knowledge of the trestles. *See* Ex. 26 [J. Taylor 29]. He admits that he has no expertise or training in hydrology.  *See* Ex. 26 [J. Taylor 42].  Therefore, under Rules 701 and 702, he should be prevented from offering an opinion as to the cause of the flood at trial.

Plaintiff Norma Taylor has no first hand knowledge of the railroad trestles. *See* Ex. 27 [N. Taylor 16].  She expressed no opinion on the cause of the flood.  *See* Ex. 27 [N. Taylor 37]. Therefore, under Rule 701 and 702, she should be prevented from offering an opinion on the cause of the flood at trial.

### B.   *Plaintiffs should be prevented from testifying that the existing trestles are not of sufficient size to drain the area*

Whether a trestle is of sufficient size to drain a certain volume of water is a question of hydrology and therefore, is not a proper topic of testimony for a lay witness.  *See* Section II A, *supra*. Moreover, none of the Plaintiffs know how large the existing trestles are and none of the Plaintiffs have inspected the trestles. Therefore, even if Plaintiffs were qualified to assess their adequacy, Plaintiffs lack the foundation to make judgments about the trestles. Therefore, under Rules 701, and 702, Plaintiffs should be prevented from testifying that the trestles are too small or are not adequate.

### C.   *Plaintiffs should be prevented from testifying about the value or diminution in value of their homes*

### 1.   *Plaintiffs Admitted that their Opinions are "Speculation"*

The requirement in Rule 701(a) that a lay opinion be "rationally based on the perception of the witness" exists to prevent the admission of speculative opinion testimony.  *Alexis v. McDonalds Restaurants of Mass.*, 67 F.3d 341, 347 (1st Cir. 1995).  Speculative evidence has no probative value and therefore, is not relevant and should not be admitted.  *Hubbard v. Haley*, 317 F.3d 1245, 1254 (11th Cir. 2003); and Fed. R. Evid. 402.

In this case, all Plaintiffs, except for Keith Griffin, admitted that their opinions on value or diminution in value of their properties were based on speculation.   *See* Doc. # 39, Ex. 1. Therefore, their opinions should be excluded under Fed. R. Evid. 402.  Griffin opined that his rental properties have declined in value by 50%. *See* Ex. 12 [K. Griffin 28].  He claims that that rent generated by a rental property is the best indicator of its value. Since his rents have not declined, his opinion that the overall value has fallen by 50% is not rationally based on his perceptions and would only confuse a jury and therefore, his opinion should be excluded by Rule 701 & 702.  Griffin has not produced another comparable flood damaged rental property to provide a reasonable basis for comparison.  Therefore, his opinions are purely speculative and should be excluded by Rule 402.

### 2.   *Some Plaintiffs Based their Opinions on the Appraisal Reports*

In support of their claim for diminution in value, Plaintiffs retained Ron Beaudry, an appraiser, to testify that Plaintiffs' houses decreased in value as a result of the floods.  As previously briefed in Union Pacific's Second Motion for Summary Judgment (*See* Doc. # 39), Beaudry's deposition revealed serious flaws in the appraisal reports. Not only did Beaudry admit that his opinions would not "pass muster" under the Uniform Standards of Professional Appraisal Practices or the Arkansas Appraisal Board, but he also admitted that he lied under

oath.  *See* Doc. # 39, Ex. 3 at 98-99.  Defendant anticipates that Plaintiffs will offer opinion testimony on the value or diminution in value of their home based on what they read Beaudry's appraisal reports.

Those opinions should be excluded for several reasons. First, they are hearsay.  Plaintiffs should not be allowed to merely parrot what they heard Beaudry say or what they read in his reports.  Second, it circumvents the *Daubert* standard.  The appraisal report purports to be expert testimony, and it can only be introduced through its author if the opinions in the report meet the *Daubert* standard. Third, this is exactly the type of testimony that is prohibited by 701(c)–lay witnesses are simply not allowed to give opinions that are based on specialized knowledge, skill or training.

### D.   *Plaintiff Stewart Kirby should be prevented from offering legal opinions*

Plaintiff, Stewart Kirby has many opinions.  *See e.g.*, [http://www.beebefloods.blogspot.com].  As early as 2006, he began conducting informal research into floodplain development regulation in Beebe, Arkansas.  *See* Ex. 28 [e-mail Kirby to Jackson 2006]. Many of Kirby's opinions are in the form of legal conclusions.  For example, he concluded that Union Pacific violated the law because he could not find floodplain development permits in Union Pacific's name.  *See* Ex. 17 [Kirby Deposition 145].

The admissibility of lay opinions is determined by Fed. R. Evid. 701. Under this rule, lay opinions shall be excluded unless the party offering the opinion can show that the opinion is:

(a)   rationally based on the perception of the witness,
(b)   helpful to a clear understanding of the witness' testimony or the determination of a fact in issue, and
(c)   not based on scientific, technical, or other specialized knowledge within the scope of Rule 702.

A lay person must have personal knowledge of the matters for which he testifies in order to submit his opinion to the court. Fed. R. Evid. 602. Legal opinions are also properly excluded under Rule 701 or 702. *Christiansen v. National Savings and Trust Co.*, 683 F.2d 520, 529 (D.C. Cir.1982) ("lay legal conclusions are inadmissible in evidence"); *Marx & Co., Inc. v. Diner's Club, Inc.*, 550 F.2d 505, 509-10 (2nd Cir.) (finding error in admission of expert opinion testimony as to parties' legal obligations under contract), cert. denied, 434 U.S. 861 (1977).

> ### 1. *Kirby should not be allowed to opine on whether a base flood elevation was valid under local, state or federal law*

During his deposition, Kirby opined that the City of Beebe did a base flood elevation study in January of 2001. *See* Ex. 17 [Kirby 86]. Kirby also opined that this study complied with the federal regulations even though the City only relied on affidavits. *See* Ex. 17 [Kirby 99]. In Kirby's opinion, the detailed methodology was not required, the affidavit method was sufficient. The terms "base flood elevation" and "detailed method" are terms of art within the Federal Regulations. *See* 44 C.F.R. § 59.1 and Ex. 29 [Managing Floodplain Development in Approximate Zone A Areas, page V-11]. Communities are required to comply with the federal regulations when they develop in floodplains. Therefore, when Kirby offers an opinion that Beebe established a base flood elevation, he is really offering a legal opinion that Beebe complied with the federal regulations for setting base flood elevations. The same is true for his opinion regarding the affidavit method. His opinion amounts to a legal conclusion that the City of Beebe complied with the federal regulations when they used the affidavits rather than performing a detailed study. Therefore, these legal opinions, and any other legal opinion offered by Kirby should be excluded.

> ### 2. *Kirby should not be allowed to testify about what FEMA, the Arkansas Natural Resources Commission, or the City of Beebe told him*

What Kirby was told in his conversations with FEMA, the Arkansas Natural Resources Commission or the City of Beebe is hearsay and should be excluded under Rule 802.

In his deposition, Kirby claimed that FEMA told him that the Union Pacific was required to apply for a floodplain development permit before doing any work or maintenance on the track. *See* Ex. 17 [Kirby Deposition, 59]. In reality, Kirby asked a general question through email and he received a very general response that does not actually answer his question. *See* Ex. 30 [Kirby's ask the expert email 3/11/10]. Rule 802 should prohibit Kirby from testifying that FEMA told him that Union Pacific was required to have floodplain development permits before doing maintenance on the track.

Kirby also testified that Arkansas did not take the floodplain administrator job seriously until 2000 or 2003. *See* Ex. 17 [Kirby 66]. He claims that Arkansas did not require certification for floodplain administrators before that time. *Id*. Kirby claims he read about certification on the Arkansas Natural Resources Commission's website. *Id*. at 67. He also admitted that he merely assumed that the State was not taking the position seriously based on what he read. *Id*. This whole line of testimony should be excluded for several reasons. First, it is hearsay for Kirby to testify about what the Arkansas Natural Resources Commission said on its website and it should be excluded under Rule 802. Second, Kirby's opinion that the floodplain administrator job was not taken seriously is inadmissible under Rule 701 because it is not rationally based on his observations and it is not helpful to the jury.

Kirby also testified that a member of the Arkansas Resource Commission told him that the affidavit method was an acceptable way to establish a Base Flood elevation. *See* Ex. 17 [Kirby 95]. This testimony is hearsay and should be excluded under Rule 802.

Kirby had numerous other conversations and correspondence with employees of the Arkansas Natural Resources Commission. *See, e.g.*, Ex. 17 [Kirby 162]. Rule 802 should prevent Kirby from testifying about what an employee of the Natural Resource Commission told him.

Kirby had many discussions with City officials, namely Mayor Robertson and Milton McCullar, the floodplain administrator. Kirby should be prevented from testifying about what those officials told him. Fed. R. Evid. 802.  For example, Kirby testified that McCullar told him that the railroad was within the City limits. *See* Ex. 17 [Kirby 211].  Kirby testified that one of the houses above 220 ft was damaged.  *See* Ex. 17 [Kirby 84]. He admitted that he does not have first hand knowledge of the home's elevation or the alleged damage but that he was told by Milton McCullar. *See* Ex. 17 [Kirby 85].  Those statements and others like them are hearsay and should be excluded by Rule 802.

### 3.    *Kirby should not be allowed to offer his interpretations of local, state and federal regulations and laws*

Kirby believes that "[a]ll laws are discretionary." *See* Ex. 17 [Kirby 54]. During his deposition, Kirby offered his own interpretations of several floodplain regulations that he had read. For example, he testified the word develop, when used in the federal regulations, includes railroad maintenance.  *See* Ex. 17 [Kirby 145-147].

Kirby also has his own conclusions about what sorts of permits and studies are required for development in zone A and in zone AE. Kirby is adamant that development in zone A does not require the establishment of a base flood elevation. *See* Ex. 17 [Kirby 101]. Kirby was never able to cite a statute or ordinance to back up his statement.  *See* Ex. 17 [Kirby 101-103].  Kirby is not qualified to interpret the local, state, and federal regulations and laws.  His interpretations of them are legal conclusions and therefore inadmissible under Rule 701, 702.  Kirby often stated that his opinions are based on FEMA regulations but he was unable to ever cite the regulation he

was talking about. *See* Ex. 17 [Kirby 55, 59, 72, 94, 97, 102, 145, 146, 209, and 232]. This testimony violates the best evidence rule. Fed. R. Evid. 1002. The best evidence of what a statute, ordinance, or regulation says is the document itself, not Kirby's say-so.

### E.   *Plaintiffs' opinions on the cost to repair should be excluded*

After the floods, many Plaintiffs received repair estimates from contractors, insurance adjustors, or both. *See, e.g.*, Ex. 8 [A. Felbermeyer 66]; Ex. 1 [G. Horness 31]; Ex. 31 [Winters 45]. Plaintiffs may not testify about these estimates under Rule 802. Moreover, no Plaintiff testified that they have a background or training in estimating the cost to repair a flood damaged home. Most Plaintiffs admitted that they have no background in estimating the cost to repair flood damage. *See* Ex. 5 [E. Adams 33-34]; Ex. 6 [G. Adams 20]; Ex. 7 [L. Crider 48]; Ex. 8 [A. Felbermeyer 65-66]; Ex. 9 [S. Felbermeyer 12]; Ex. 10 [J. Gordon 23-24]; Ex. 11 [R. Gordon 57]; Ex. 13 [A. Healy 10]; Ex. 1 [G. Horness 30]; Ex. 16 [C. Kirby 24]; Ex. 17 [S. Kirby 182]; Ex. 18 [J. Mesko 50-51]; Ex. 19 [S. Mesko 12]; Ex. 21 [B. Parker 35]; Ex. 27 [N. Taylor 17]. The other Plaintiffs were silent on the issue. Therefore, each Plaintiffs' opinion about the cost to repair should also be excluded under Rule 701, 702 and 802.

## III.   The opinion testimony of Don Beavers, Milton McCullar, Mike Robertson and Bud Guyot should be excluded under *Daubert*

As previously briefed Defendant's Brief in Support of its First Motion for Summary Judgment, expert testimony is required to prove causation in a flooding case. *See* Doc. # 29 (citing *Kansas City, Ft. S. & M. R. Co. v. Cook*, 57 Ark. 387, 21 S.W. 1066 (1893); *Herriman v. United States*, 8 Cl.Ct. 411, 420 (1985); *Cox v. Tennessee Valley Authority*, 989 F.2d 499 (6th Cir. 1993); *Alost v. U.S.*, 73 Fed.Cl. 480 (2006); *Hendricks v. U.S.*, 14 Cl.Ct. 143 (1987)). Cases tried under Arkansas law and the Federal Rules of Evidence agree on that point. *Id.*

The Federal Rules of Civil Procedure require expert disclosures.  *See* Rule 26(a)(2).  As previously briefed in Doc. # 29, Plaintiffs did not disclose Beavers, Robertson, McCullar or Guyot as experts and none of those men produced expert reports.  When a party fails to disclose and expert, "the party is not allowed to use the information or witness to supply evidence on a motion, at a hearing, or at trial."  Fed. R. Civ. Pro. 37(c)(1); *see also Ulbrik v. UPR Products, Inc.*, 2010 WL 5105050 (E.D. Mich., 2010).

Plaintiffs have previously argued that testimony from Beavers, Robertson, McCullar, and Guyot amounts to substantial evidence of causation. *See* Doc. # 34.  However, their causation testimony is inadmissible because none of their opinions meet the requirements of Rule 702 and *Daubert*.

The admissibility of expert testimony is governed by Fed. R.  Evid. 702 which says:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts and data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Fed. R. Evid. 702. Causation testimony from Beavers, Robertson, McCullar and Guyot should be excluded because it does not pass the three hurdles laid out in Rule 702.  The Supreme Court has held that a trial court should act as a gatekeeper to ensure that only reliable expert testimony is admitted.  *See Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993) and *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137 (1999).

*Daubert* was specifically focused on scientific expert testimony. *Daubert* at 585. The United States Supreme Court highlighted four factors for a court to evaluate before making a ruling on the admissibility of scientific expert testimony: (1) whether a theory or technique can

be and has been tested; (2) whether the theory or technique has been subjected to peer review and publication; (3) the technique's known or potential rate of error; and (4) the general acceptance of the theory or technology in the relevant scientific community. *Daubert* at 593-94. The factors listed in *Daubert* were nonexclusive and flexible; in other words, an inquiry into those specific factors is not required. *Id.* at 594. What *Daubert* does require is that "the trial judge must ensure that any and all scientific testimony or evidence admitted is not only relevant but reliable." *Id.* at 589.

Six years later the United States Supreme Court expanded the *Daubert* holding so that trial courts now act as gatekeepers for all expert testimony and not just testimony based on "scientific" knowledge. *See Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137 (1999).

In *Kuhmo*, the plaintiffs proffered the testimony of Dennis Carlson, Jr. to support their claim that a tire blowout was the result of a defect in the tire. *Id.* at 142. Ultimately the Supreme Court upheld the trial court's decision to exclude Mr. Carlson's testimony on grounds that it was unreliable. *Id.* at 158. Mr. Carlson's qualifications were not in doubt–"a masters degree in mechanical engineering, 10 years' work at Michelin America, Inc., and testimony as a tire failure consultant in other tort cases"–rather, it was the method he used to form his opinion that created problems. *Id.* at 153. Mr. Carlson based his opinion on the theory that if a tire does not show signs of abuse and it separates, then a defect will have caused the separation. *Id.* at 154. Mr. Carlson looked for four signs of abuse; he did not find two of four and concluded that the separation was caused by a defect in the tire. *Id.* at 154.

Under *Kuhmo*, an expert's opinion should be based on a method that is equal in intellectual rigor to the method(s) used in the expert's relevant field of expertise. *Id.* at 152. There was no evidence that other experts in the industry used Mr. Carlson's four factor method.

*Id.* at 157. There was no literature that supported Mr. Carlson's method. *Id.* at 157. "[N]o one has argued that Carlson himself, were he still working for Michelin, would have concluded in a report to his employer that a similar tire was similarly defective on grounds identical to those upon which he rested his conclusion here." *Id.* at 157. Since the plaintiffs did not show that Carlson's testimony met "Daubert's factors or *any other* set of reasonable reliability criteria" the trial court excluded his testimony. *Id.* at 158 (emphasis in original).

The court's role as a gatekeeper is flexible so that the inquiry can be tailored to the specific facts of the case. *Id.* at 158.

Under Rule 702, the party offering the testimony "has the burden of establishing that the pertinent admissibility requirements are met by a preponderance of the evidence." Fed. R. Evid. 702 advisory committee note.

In this case, Beavers, Robertson, McCullar and Guyot opined that Plaintiffs' neighborhood flooded because the track structure does not provide adequate drainage. All of these witnesses lack qualifications to testify on issues of hydrology, and none of them used a reliable and accepted method to arrive at their opinions. Therefore, their causation opinions are inadmissible.

### A. *Beavers' causation opinion does not pass Daubert*

After the December 2009 flood, Beavers was asked by the City of Beebe to determine "the general idea of what might be going on." *See* Ex. 32 [Beavers Deposition, page 60]. Initially, Beavers reviewed the FEMA maps and concluded that "more openings in the railroad would not have prevented nor reduced the flooding." *See* Ex. 33 [Beavers Jan. letter]. Later, Beavers testified that he went out to where he thought the water was backing up. While he was there, he did not take any measurements. Instead, observed the pine needles in the trees. Based

on his pine needle observations, he concluded that the railroad needed to have more openings in the embankment.

During his deposition, Beavers admitted that the pine needle method is not used by engineers when they are designing structures. *See* Ex. 32 [Beavers 60]. Moreover, there is no evidence in the record that the pine needle method has been tested for accuracy and reliability; there is no evidence that it has been peer reviewed; and there is no evidence of the rate of error in the pine needle method. According to Beavers himself, instead of using the pine needle method to determine the cause of a flood, an engineer would perform a formal hydraulic analysis in order to arrive at an opinion to a reasonable degree of engineering certainty. *See* Ex. 32 [Beavers Depo., 60]. Beavers claimed that his firm has the capability to do such an analysis but he did not perform this analysis. *See* Ex. 32 [Beavers Depo. 59-60]. Instead, he used the pine needle method. *See* Ex. 32 [Beavers Depo. 59-60].

In addition to the problems with the foundation for Beavers' opinion, the substance of his opinion should also be troublesome for the Court. He cannot say how much lower the flood waters would have been if the trestles had not been removed. *See* Ex. 32 [Beavers 58, 62, 133]. In his words, his opinion is only a "qualitative judgment." *See* Ex. 32 [Beavers 125]. In order to determine how much of a difference the removed trestles would have made, he would need to do a proper analysis. *See* Ex. 32 [Beavers 64]. Since Beavers cannot say how much of a difference the trestles made, his opinion is not useful in determining whether Union Pacific was a legal cause of Plaintiffs' harm.

Beavers admitted that even if the removed trestles would have reduced the flood by 10 inches the houses still would have suffered damage. *See* Ex. 32 [Beavers 59]. He cannot, however, state what the level of the floods would have been had Union Pacific done something

different. *See* Ex. 32 [Beavers 58]. Therefore, there is no probative value to his opinions and they constitute pure speculation and should be excluded. *Tamraz v. Lincoln Elec. Co.*, 620 F.3d 665, 677 (6th Cir. 2010) (holding that speculation, even if offered by a genuine scientist, is not admissible).

*Kuhmo* is directly on point: Beavers' opinion should not be admitted because he used less rigorous method than what engineers use in their daily work. If Beaver's would not trust the pine needle method to determine a safe building elevation when designing a new structure, then the it is an unreliable method to determine causation in this case. Also, Beavers was not disclosed as an expert and he has not produced an expert report as required by Fed. R. Civ. P. 26. Therefore, Plaintiffs are not allowed to use Beavers as an expert in this case. Fed. R. Civ. P. 37(c)(1); *see also Ulbrik v. UPR Products, Inc.*, 2010 WL 5105050 (E.D. Mich., 2010).

### B. Robertson's causation opinion does not pass Daubert

Robertson admitted in is his deposition that he is completely unqualified to opine on issues of hydrology. He admitted that he is not a hydrologist. *See* Ex. 3 [Robertson Deposition, 74]. In fact, he has taken no courses in hydrology. *See* Ex. 3 [Robertson Deposition, 106-107]. He does not have an engineering degree. *See* Ex. 3 [Robertson Deposition, 74]. Based on his lack of education, experience and training in hydrology, it is no surprise that he has not calculated any flow rates. *See* Ex. 3 [Robertson Deposition, 74 & 106]. In fact, he admitted that he does not know how to calculate flow rates and he has never seen the flow rates on drainage in this area. *See* Ex. 3 [Robertson Deposition, 106-107].

> Q.    Okay. And you're not qualified to offer an opinion as to hydrology, the flow of water under the trestles, how much flows, whether it caused the flood, or anything like that? Do you agree with that?
>
> A.    I'm not an expert at it.

> Q.      That's outside of your area of expertise; right?
>
> A.      I have an opinion.
>
> Q.      I know it. But it's outside of your area of expertise?
>
> A.      Yes. I don't calculate it for a living.
>
> Q.      Okay. Well, it's outside of your area of expertise?
>
> A.      Okay. Yes.

*See* Ex. 3 [Robertson Depo. 106-107].   Robertson's testimony clearly shows that he is not qualified to testify as expert under Rule 702.

Despite Robertson's lack of qualifications, he has blamed the railroad in the press. *See* Ex. 4 [Daily Citizen].  He also blamed the railroad in his deposition. *See* Ex. 3 [Robertson 104-105].  Since Robertson not qualified to opine on issues of hydrology, he should be prevented from offering any causation opinion at trial under Rule 701 and 702.

Also, Robertson was not disclosed as an expert and he has not produced an expert report as required by Fed. R. Civ. P. 26.  Therefore, Plaintiffs are not allowed to use Robertson as an expert in this case. Fed. R. Civ. P. 37(c)(1); s*ee also Ulbrik v. UPR Products, Inc.*, 2010 WL 5105050 (E.D. Mich., 2010).

### C.      *McCullar's causation opinion does not pass Daubert*

Milton McCullar is not an expert. Prior to holding his current position, McCullar worked as a laborer for the City street department.  See Ex. 34 [McCullar Deposition, 8-11].  McCullar opined that the trestle opening was too small, but he admitted that he did not use scientific data or methodology to determine the cause of the flood nor has he done any hydrologic calculations to determine the cause of the flood. See Ex. 34 [McCullar Deposition, 52 & 54-55].  He also admitted that performing hydrologic calculations to determine the cause of flooding is outside

his area of expertise. See Ex. 34 [McCullar Deposition, 55-56].  Due to his lack of expertise, McCullar admitted that he cannot say what openings, if any, would have made a difference in the flood. See Ex. 34 [McCullar Deposition, 55-56].  McCullar's testimony clearly shows that he is not qualified to testify as an expert under Rule 702. Also, McCullar was not disclosed as an expert and he has not produced an expert report as required by Fed. R. Civ. P. 26.  Therefore, Plaintiffs are not allowed to use McCullar as an expert in this case. Fed. R. Civ. P. 37(c)(1); s*ee also Ulbrik v. UPR Products, Inc.*, 2010 WL 5105050 (E.D. Mich., 2010).

      **D.**     ***Guyot's causation opinion does not pass Daubert***

Bud Guyot is not an expert in hydrology.  He is a farmer. There is no evidence that he has any kind of specialized training, education or experience to enable him to offer an opinion on the cause of the flood or the effect that the trestles would have had on the water level. He offered no testimony on the maintenance of the trestles but he did offer the opinion that the railroad caused the water to backup.  *See* Ex. 35 [Guyot 65].  Guyot was not disclosed as an expert and he has not produced an expert report as required by Fed. R. Civ. P. 26.  Therefore, Plaintiffs are not allowed to use Guyot as an expert in this case. Fed. R. Civ. P. 37(c)(1); s*ee also Ulbrik v. UPR Products, Inc.*, 2010 WL 5105050 (E.D. Mich., 2010).

**IV.  Topics that are preempted by federal law are irrelevant and should be excluded**

This Court should exclude testimony or argument on topics that are preempted by Federal Law.  Defendant anticipates that Plaintiff will attempt to introduce evidence to show (A) that the design and construction of the railroad embankment, bridges, and trestles caused the flooding; (B) that Union Pacific breached a duty to inspect or maintain the track, including the drainage facilities such as bridges and trestles; and (C) that Union Pacific shortened a bridge near Ward,

Arkansas. Evidence in each of theses three areas is preempted by Federal law and should not be admitted in this case.

### A.   *Evidence of negligent design and construction should be excluded*

This Court should prevent Plaintiffs from introducing evidence or arguing to the jury that the Union Pacific negligently designed or constructed the railroad embankment, bridges and trestles.  Claims based on the design and construction of the railroad embankment, bridges, and trestles are preempted by the ICCTA and the Dormant Commerce Clause.  Union Pacific incorporates by reference the preemption arguments contained in Section III its Brief in Support of its Motion for Summary Judgment (Doc. # 29).  Moreover, Plaintiffs, in their response to Union Pacific's Motion for Summary Judgment (Doc. # 34), abandoned their claim for negligent design and construction. Therefore, any evidence or argument to the jury that Union Pacific negligently designed or constructed the railroad embankment, bridges and trestles is irrelevant and should be excluded. Fed. R. Evid. 402.

### B.   *Evidence that Union Pacific breached a duty to inspect or maintain the track, including drainage facilities such as bridges and trestles should be excluded*

The Federal Railroad Administration ("FRA") comprehensively regulates track inspection and maintenance.  FRA inspectors are required to inspect each section of track twice a week.  49 C.F.R. § 213.233.   Among other things, FRA inspectors are required to inspect whether drainage facilities such as bridges and trestles are being "maintained and kept free of obstructions to accommodate expected water flow for the area concerned." 49 C.F.R. § 213.33.

The FRA regulations expressly preempt state and local regulation of track maintenance. 49 C.F.R. § 213.2. A plaintiff may not use a tort suit to collaterally challenge the determinations of FRA track inspectors. *Shots v. CSX Transp., Inc.,* 38 F.3d 304 (7th Cir. 1994). In a crossing accident case, *Stevenson v. Union Pacific Railroad*, 110 F.Supp.2d 1086 (E.D. Ark. 2000), the plaintiffs argued that the track in question did not meet Class IV requirements although the FRA inspector found that the track was compliant. *Id*. at 1092. Judge Wilson wrote: "This is an impermissible collateral attack on the regulatory process." *Id*.

In this case, Union Pacific anticipates that Plaintiffs will attempt to introduce evidence and argue to the jury that Union Pacific breached its duty to inspect and maintain the drainage facilities underneath the roadbed. The evidence produced in this case shows that the track and drainage facilities were inspected as required by federal law and that the inspectors found no fault with drainage underneath the roadbed. *See* Ex. 36 [Golden Deposition 15-16]; Ex. 37 [Mears Deposition 21-22]. There is no evidence of an FRA violation in this area. Any evidence or argument that that Union Pacific did not adequately maintain the drainage facilities or that it failed to inspect for drainage issues is an impermissible collateral attack on the regulatory process and should be excluded because it is irrelevant. Fed. R. Evid. 402.

**C.    *Evidence that Union Pacific shortened a bridge near Ward, Arkansas should be excluded***

Union Pacific anticipates that Plaintiffs will attempt to introduce evidence that a bridge near Ward, Arkansas, was shortened and that Plaintiffs will attempt to argue that the shortening

of this bridge caused their damages.  This evidence and line of argument should be excluded because it is irrelevant and it would only serve to prejudice Union Pacific and confuse the issues.

First, Plaintiffs never sued Union Pacific for shortening a bridge located 5 miles from Beebe. In their original Complaint, Plaintiffs make no mention of this shortened trestle.  *See* Doc. # 2.  In discovery, Plaintiffs were specifically asked for the facts that support their claims for negligence, nuisance, and trespass. Again, Plaintiffs never mentioned the shortened trestle. *See* Ex. 38 [Responses to Interrogatory No. 9, 14, & 15].  On the final day to ask leave to amend pleadings, Plaintiffs asked leave to amend their Complaint and still no mention of the shortened trestle.  *See* Doc. # 23.   Plaintiffs first mentioned the shortened trestle in response to Union Pacific's first Motion for Summary Judgment.   *See* Doc. 35 [Plaintiffs' Material Facts in Dispute]. Again in the pretrial disclosures, Plaintiffs made an issue of the third trestle.  *See* Doc. # 58.

Relevant evidence is that which has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed. R. Evid. 401. Since Plaintiffs have not made this bridge part of their Complaint, whether the bridge was shortened and whether it caused or contributed to flooding are not facts of consequence in this law suit. Therefore, evidence and argument regarding those points is irrelevant and inadmissible.  Fed. R. Evid. 402.  Also, introduction of

this evidence would only serve to confuse the issues and it should be excluded for that reason as well. Fed. R. Evid. 403.

Second, the whole topic of the shortened trestle is preempted by the ICCTA and therefore irrelevant.  On the issue of preemption, Union Pacific incorporates the arguments it made in its Brief in Support of its Motion for Summary Judgment.  *See* Doc. # 29.  Accordingly, all discussion of the shortened trestles should be excluded under Rule 402.

**V.   Evidence of removing the trestles or shortening is irrelevant and should be excluded**

Plaintiffs have conceded that they are not suing Union Pacific for negligent construction and design.  *See* Doc. # 34.  Therefore, any discussion, argument or testimony regarding the trestles that were removed is irrelevant and should be excluded by Rule 402.

> Respectfully submitted,
>
> JOSEPH P. MCKAY (99006)
> TRAVIS J. FOWLER #2007223
> WILLIAM D. SHELTON, JR. # 2011086
> FRIDAY, ELDREDGE & CLARK, LLP
> 400 West Capitol, Suite 2000
> Little Rock, AR  72201-3522
> 501-370-1497 – Telephone
> 501-376-2147 – Facsimile
>
> Attorney for Defendant Union Pacific Railroad Company
>
> By:   /s/ Joseph P. McKay
>           JOSEPH P. MCKAY

**CERTIFICATE OF SERVICE**

I, Joseph P. McKay, hereby certify that a true and correct copy of the foregoing pleading has been filed using the CM/ECF system on this 2nd day of September, 2011 and the clerk of the court will forward a copy to the following:

James F. Swindoll
Law Offices of James F. Swindoll
Attorneys at Law
212 Center St., Suite 300
Little Rock, AR 72201

/s/ Joseph P. McKay
JOSEPH P. MCKAY