```
                IN THE UNITED STATES DISTRICT COURT
               FOR THE EASTERN DISTRICT OF ARKANSAS
                          WESTERN DIVISION

DERRICK AND ANITA SEYMORE;
SHANE SMITH; THADDEUS AND
KAY WINTERS; BRIAN AND STEPHANIE
PARKER; KEITH GRIFFIN;
ARNOLD AND SHELBY FELBERMAYER;
JAMES AND NORMA TAYLOR;
GENE AND EMMA ADAMS;
CONNIE AND STEWART KIRBY;
GREGORY HORNESS;
ANTHONY AND SHERRY HEALY;
LINDA CRIDER; JONATHAN AND
RENEE GORDON
                                                  PLAINTIFF

VS.              NO. 4:10-CV-239 BSM

UNION PACIFIC RAILROAD COMPANY
                                                  DEFENDANT


                    VIDEOGRAPHIC DEPOSITION

                              OF

                        MIKE ROBERTSON
                     (Taken April 28, 2011)
```

ORIGINAL

Gwendolyn R. LaSalle, CCR
Bushman Court Reporting
(501) 372-5115

1   it was a private entity owned by the railroad.
2        So, we asked or Don asked about them -- the possibility
3   of opening up. And I do remember the arrogance of the
4   railroad, and that said if the mayor had $3 million, we would
5   be happy to open additional trestles, but the railroad had a
6   long list, and we would put you on the list, but we didn't
7   know when that would be, and if there became any litigation
8   against the railroad, we'd take you off the list definitely.
9   Q.   And who said this specifically?
10  A.   Drew.
11  Q.   Okay. So, and you said he was arrogant, and you said, I
12  sensed the arrogance?
13  A.   And I thought that was very arrogant, in my opinion, to
14  tell us that if there were litigation -- and I said, Well, you
15  might as well take us off the list, because the City is not
16  suing you, but I understand that there may be -- there's talk
17  of the individuals suing you, so I suppose we'll go off the
18  list and we'll never get it done.
19  Q.   Did the City ever sue the railroad?
20  A.   Did we?
21  Q.   Yeah.
22  A.   Not to my knowledge. We wanted to work with the
23  railroad.
24  Q.   Okay. What else did the railroad representatives, either
25  one of them, say to you?

```
 1   have got a four-inch rain yesterday, the dike would have held
 2   it back again.
 3   Q.   Do you know how much rain we had yesterday?
 4   A.   Yesterday?
 5   Q.   Yes, sir.
 6   A.   In Beebe, less than an inch.
 7   Q.   Okay.  How much rain have we had in the last month?
 8   A.   That -- we've had a lot of rain in the last month.
 9   Q.   I mean, do you know the numbers, the amount?  Do you know
10   the measurements?
11   A.   No.  I don't know the numbers.
12   Q.   Okay.  All right.  You're not a hydrologist?
13   A.   No.
14   Q.   You don't have an engineering degree?
15   A.   We've -- no.
16   Q.   What is your educational background?
17   A.   My education is -- well, it's business.
18   Q.   Okay.
19   A.   Accounting.
20   Q.   Okay.  You've never conducted flow rates on flood
21   studies, anything like that?
22   A.   No.
23   Q.   It would be speculation for you to say additional rain
24   would have flooded?
25   A.   No, not in my mind.
```

1  had with the railroad people, I think particularly a man named
2  Drew Teffier. You mentioned that you thought that in their
3  discussion they told you -- and I'm going to paraphrase, so
4  I'm not trying to quote it exactly -- that it was going to
5  take some money on behalf from Beebe to get this matter of
6  trestles reopened?
7  A.  Correct.
8  Q.  Did I summarize that shortly like that?
9  A.  Yes.
10 Q.  Was there a specific discussion about they could reopen
11 the trestles but they weren't going to because they didn't
12 have the money, or they wanted Beebe to pay to reopen the
13 trestles?
14 A.  I felt it was more the arrogance of the statement that
15 said, Well, if the City has $3 million to give the railroad,
16 then we will be happy to open up trestles or additional
17 trestles.
18 Q.  Do you believe when he told you that, he meant that the
19 railroad could fix this problem for $3 million?
20 A.  I believe the possibility that they had established a
21 figure.
22 Q.  Was it a 3 million round number?
23 A.  $3 million is what his statement was.
24 Q.  Now, other than the discussion you had with him about
25 that, I just want to kind of flush out the arrogance for a

1   Q.   From that direction. And is that Cypress Creek backing
2   up as it backs up into Windwood?
3   A.   No. The railroad causing the water to back up. The
4   railroad bed causing the water to back up.
5   Q.   Okay. Is Cypress Creek -- Cypress Creek runs under the
6   railroad between Beebe and Ward; right?
7   A.   There -- to my knowledge, there's five openings.
8   Q.   No. Okay. Let's go back to the question.
9   A.   Okay.
10  Q.   Cypress Creek runs under the railroad between Beebe and
11  Ward? Or do you know?
12  A.   Okay.
13  Q.   I'm asking you. Do you know?
14  A.   Yes. I'm going to say yes to that.
15  Q.   Okay.
16  A.   Okay.
17  Q.   And you're saying that water backs up along the railroad
18  from the direction of Ward to Windwood Meadows?
19  A.   I'm saying there's a massive amount of water coming in
20  through a -- if you want to designate it a waterway along the
21  railroad track. And it has to flow through openings, which
22  it's apparent there's not enough openings for the water to --
23  that it can flow through fast enough that it backs up.
24  Q.   Okay. Well, what I'm asking, though, is, you said --
25  have you actually sat there and timed and put stakes out and

1  measured the water backing up from Cypress Creek along the
2  railroad to the Windwood Meadows Subdivision?
3  A.   Not -- not out in the field.  On Tory Lane, when the
4  water started, the fire department and myself were out there.
5  And you could lay a marker on the street and watch the water
6  pass that marker.  You could lay another marker and watch it
7  pass it, and gradually getting deeper.
8  Q.   Okay.  You're talking in the subdivision itself as the
9  water is rising?
10 A.   The water is not running off of the subdivision.  It's
11 coming from the railroad.
12 Q.   But the water is rising.  Is that what you're saying?
13 A.   It is rising.
14 Q.   Okay.  All right.  When you've observed this, has it been
15 raining?
16 A.   It may have rained periodically.
17 Q.   How soon after rains -- let me just ask you, when is it
18 that you've witnessed the water rising in Windwood Meadows
19 Subdivision?  Is that the October and the December floods?  Is
20 that what you're talking about?
21 A.   Yeah.
22 Q.   Okay.
23 A.   October and December and yesterday.
24 Q.   Okay.
25 A.   And other days.

Gwendolyn R. LaSalle, CCR
Bushman Court Reporting
(501) 372-5115

1  Q. And those events were preceded by rain?
2  A. Yeah.
3  Q. Okay. You talked to Mr. Swindoll about some opinions you
4  have as far as the water backing up and what's causing it and
5  the trestles aren't big enough. But I just want to make sure
6  that this is outside of your area of expertise. You're not an
7  engineer; right?
8  A. I'm not an engineer.
9  Q. Do you know what flow rate is?
10 A. No.
11 Q. Okay. I presume you don't know how to calculate a flow
12 rate?
13 A. No.
14 Q. Okay. You've never probably even seen any flow rates
15 calculated related to the drainage basin behind the Windwood
16 Meadows Subdivision; is that fair enough?
17 A. That's fair.
18 Q. Okay. You've never had any courses or training in
19 hydrology?
20 A. No.
21 Q. Okay. And you're not qualified to offer an opinion as to
22 hydrology, the flow of water under the trestles, how much
23 flows, whether it caused the flood, or anything like that? Do
24 you agree with that?
25 A. I'm not an expert at it.

1   Q.   That's outside of your area of expertise; right?
2   A.   I have an opinion.
3   Q.   I know it.  But it's outside of your area of expertise?
4   A.   Yes.  I don't calculate it for a living.
5   Q.   Okay.  Well, it's outside of your area of expertise?
6   A.   Okay.  Yes.
7   Q.   Okay.  You testified, I think -- let me make sure I got
8   this right -- that the failure to assume responsibility is
9   arrogance?  Is that what you said?
10  A.   I thought the manner of the statement was arrogance.
11  Q.   Because the railroad was failing to accept
12  responsibility?
13  A.   No.  I think that the manner they would not accept the --
14  I think that the manner of their arrogance was in assuming
15  that the City in making the statement -- that the City was
16  going to be able to have $3 million to make the repair.
17  Q.   Okay.  Have you ever told any citizens of Beebe that the
18  City of Beebe approved building permits in the Windwood
19  Meadows Subdivision that were below the 100-year floodplain?
20  Have you ever disclosed that information?
21  A.   Well, I don't know.  What would the 100-year floodplain
22  be?
23  Q.   Have you ever made that statement to anyone?  It's a yes
24  or no question.  Have you ever told the citizens of Beebe that
25  the City of Beebe issued building permits in Windwood Meadows

```
 1                    C E R T I F I C A T E

 2     STATE OF ARKANSAS}
                       }ss.
 3     COUNTY OF PULASKI}

 4     RE:  ORAL DEPOSITION OF MIKE ROBERTSON

 5          I, GWENDOLYN R. LASALLE, Certified Court Reporter,
       do hereby certify that the transcript of the foregoing
 6     deposition accurately reflects the testimony given; and that
       the foregoing was transcribed by me, or under my supervision,
 7     on my Eclipse computerized transcription system from my
       machine shorthand notes taken at the time and place set out on
 8     the caption hereto, the witness having been duly cautioned and
       sworn, or affirmed, to tell the truth, the whole truth and
 9     nothing but the truth.
            I FURTHER CERTIFY that I am neither counsel for,
10     related to, nor employed by any of the parties to the action
       in which this proceeding was taken; and, further, that I am
11     not a relative or employee of any attorney or counsel employed
       by the parties hereto, nor financially interested, or
12     otherwise, in the outcome of this action.
            In accordance with the Arkansas Rules of Civil
13     Procedure, Rule 30(e), review of the foregoing transcript by
       the witness was not requested by the deponent or any party
14     thereto.
            GIVEN UNDER MY HAND AND SEAL OF OFFICE on this the
15     11th day of May, 2011.

16

17

18                              Gwendolyn R. LaSalle, CCR
                                LS Certificate No. 510
19

20

21

22

23

24

25

                          Gwendolyn R. LaSalle, CCR
                            Bushman Court Reporting
                               (501) 372-5115
```