1

```
              IN THE UNITED STATES DISTRICT COURT
                   EASTERN DISTRICT OF ARKANSAS
                        WESTERN DIVISION
DERRICK and ANITA SEYMORE;       *    PLAINTIFFS
SHANE SMITH; THADDEUS and        *
KAY WINTERS; BRIAN and           *
STEPHANIE PARKER; KEITH          *
GRIFFIN; ARNOLD and SHELLY       *
FELBERMAYER; JAMES and NORMA     *
TAYLOR; GENE and EMMA ADAMS;     *
CONNIE and STEWART KIRBY;        *
GREGORY HORNESS; ANTHONY and     *
SHERRY HEALY; LINDA CRIDER;      *
JONATHAN and RENEE GORDON; and
MELTON and RUTH HAYNIE           *
vs.                              *    CASE NO. 4:10CR00239 BSM
UNION PACIFIC RAILROAD COMPANY        DEFENDANT

       Answers and Oral Deposition of KEITH GRIFFIN, a
Plaintiff called for examination by Defendant in the above
styled and numbered cause on the 30th day of August, 2011
before Wendy A. Golding, Certified Court Reporter and a
Notary Public in and for Pulaski County, Arkansas, taken at
212 Center Street, Suite 300, Little Rock, Arkansas,
commencing at 1:00 p.m.
```

Bushman Court Reporting
501.372.5115       ORIGINAL

1   A.   Because I'm not --
2   Q.   Okay.  Have you ever worked as an appraiser?
3   A.   No.
4   Q.   Okay.  You've never taken any appraisal classes?
5   A.   I might have took one in college.
6   Q.   Do you know if you did or not?
7   A.   I'm sure I did.  Maybe I didn't.  I don't know.  I
8   mean, it was 15 years ago when I went to school.  But I'm
9   sure if I got a business degree, I took some kind of
10  business law or appraisal.  I'm not a practicing appraiser.
11  Q.   It's either yes, no or I don't remember.
12  A.   I don't recall.
13  Q.   You've never worked in the appraisal business?
14  A.   No.
15  Q.   Never worked for an appraiser in any capacity?
16  A.   No.
17  Q.   You said it's your opinion that the properties are
18  worth half as much as they would be if they were not in a
19  floodplain?
20  A.   (Nodding)
21  Q.   You have to answer out loud.
22  A.   Yes.
23  Q.   So, what is the value of the houses now?
24  A.   You would be hard pressed to find anyone to give fifty
25  apiece for them.

```
 1   got in 1811 Birchwood.
 2   Q.  Okay.  And then for the December 2009 flood, the only
 3   damages you are aware of would be those that are included
 4   in the invoices that were attached to your discovery that
 5   we just went over?
 6   A.  That is correct.
 7   Q.  And the only house that got water in it in the December
 8   2009 flood was 1811 Birchwood?
 9   A.  That got inside the residence was 1811 Birchwood.  I
10   got water in the garages on the other ones.
11   Q.  You didn't have to do any sheetrock work or anything
12   like that?
13   A.  No.
14   Q.  Do the garages have bricks at the bottom; do you know?
15   A.  I don't guess I understand your question.
16   Q.  Well, are the garages finished with sheetrock or at the
17   lower level a lot of those garages have Catter bricks --
18   A.  Catter bricks.
19   Q.  -- at the bottom?
20   A.  Yes, that's correct.  And then the garage is at a lower
21   level.  The front -- the back portion of the garage is a
22   lower level as opposed to the rest of the residence.
23   Q.  Okay.  What is it that you think Union Pacific has done
24   wrong that has caused the flood, if you know?
25   A.  I think that -- I know this -- that the one trestle is
```

not enough to carry the water away. Here's why I know this. If it was, water wouldn't have been over the top of the tracks.
Q. You say just one trestle. You're just aware of one trestle?
A. I'm aware of the trestle that I looked at.
Q. Okay. All right.
A. I'm aware of the trestle that I looked at. And beside that trestle, the water was backed up on the -- I'll call it the other side or we'll call it the north side. The north side water was going over the top of the rails and the dump, in essence, and falling over on the south side. And, so, you know, when -- if you had a -- if you had a dump or something like this and water is -- it's acting as a dam. So, the water -- I mean, the water cannot get underneath right there fast enough to keep it from not hopping -- you know, if it's rolling over, it's acting as a dam. That's my opinion.
Q. Okay. Do you have any engineering training?
A. That's just why I said that's my opinion. That's exactly why I said that's my opinion.
Q. Let me see if I can knock that opinion out. Do you have any training in engineering?
A. No.
Q. Do you have any training in hydrology?

1  A.   No, I don't.
2  Q.   And you have no experience, training or education in
3  the causes of floods?
4  A.   That's another one I don't.
5  Q.   Or how much of an opening would be required to reduce
6  the flood level?
7  A.   I don't have, no. I'm just giving you a country boy
8  answer to say.
9  Q.   Well, since -- since you've offered an opinion, let me
10 ask you this: Do you think the fact the land is in a
11 hundred-year floodplain has anything to do with the fact
12 that it floods?
13          MS. GILBERT:  Objection. That calls for
14     speculation.
15 A.   Yeah, you know, I don't know. I just -- honest to
16 goodness, I don't have any -- I don't know how they do it,
17 how they determine it. You know, I don't know.
18 BY MR. McKAY:
19 Q.   Well, do you think that the fact --
20 A.   I mean, I'm not an engineer. I just -- I don't know.
21 You know, I don't know.
22 Q.   So any opinions you would have as to the cause of the
23 flood or what Union Pacific did wrong would be speculation?
24 A.   No. What I base my analysis on is just basic country
25 boy knowledge. So, you want to call it speculation that's

63

```
 1                  C E R T I F I C A T E
 2    STATE OF ARKANSAS
 3    COUNTY OF PULASKI
 4    IN RE:   ORAL DEPOSITION OF KEITH GRIFFIN
 5
 6                          * * * * * * * *
 7    I, WENDY A. GOLDING, Certified Court Reporter, a Notary
      Public in and for the aforesaid county and state, do hereby
 8    certify that the above-named witness was duly sworn by me
      prior to the taking of testimony as to the truth of the
 9    matters attested to and contained therein; that the
      testimony of said witness was taken by me in stenotype and
10    was thereafter reduced to typewritten form by me or under
      my direction and supervision; that the foregoing transcript
11    is a true and accurate record of the testimony given to the
      best of my understanding and ability.
12
      In accordance with Rule 30 (e) of the Rules of Civil
13    Procedure, review of the transcript was not requested by
      the deponent or any party thereto.
14
      I FURTHER CERTIFY that I am neither counsel for, related
15    to, nor employed by any of the parties to the action in
      which this proceeding was taken; and, further, that I am
16    not a relative or employee of any attorney or counsel
      employed by the parties hereto, nor financially interested,
17    or otherwise, in the outcome of this action; and that I
      have no contract with the parties, attorneys, or persons
18    with an interest in the action that affects or has a
      substantial tendency to affect impartiality that requires
19    me to relinquish control of an original deposition
      transcript or copies of the transcript before it is
20    certified and delivered to the custodial attorney, or that
      requires me to provide any service not made available to
21    all parties to the action.
22
23    _____
24    WENDY A. GOLDING
      Certified Court Reporter
25    LS Certificate No. 634
```

Bushman Court Reporting
501.372.5115