## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF ARKANSAS
## WESTERN DIVISION

**DERRICK and ANITA SEYMORE;**                                                    **PLAINTIFFS**
**SHANE SMITH;**
**THADDEUS and KAY WINTERS;**
**BRIAN and STEPHANIE PARKER;**
**KEITH GRIFFIN;**
**ARNOLD and SHELLY FELBERMAYER;**
**JAMES and NORMA TAYLOR;**
**GENE and EMMA ADAMS;**
**CONNIE and STEWART KIRBY;**
**GREGORY HORNESS;**
**ANTHONY and SHERRY HEALY;**
**LINDA CRIDER;**
**JONATHAN and RENEE GORDON;**
**BRIAN STROUD and**
**JEFFREY and SARA MESKO**

**v.**                                  **CASE NO. 4:10CV239 BSM**

**UNION PACIFIC RAILROAD COMPANY**                                      **DEFENDANT**

### ORDER

Defendant has filed two motions for summary judgment [Doc. Nos. 28, 38] and

plaintiffs have objected. [Doc. Nos. 33, 45].  For the reasons set forth below, summary

judgment is GRANTED in part and DENIED in part.

### I. BACKGROUND

Plaintiffs are suing defendant to recover for property damage to their homes in Beebe,

Arkansas that they claim was caused when their homes were flooded in 2009 and 2011 as a

result of defendant's negligence.  Plaintiffs claim that defendant, a railroad company,

negligently removed two railroad trestles in 1972 and 1980 and replaced them with

permanent embankments. Defendant's Statement of Undisputed Facts, ¶¶ 4, 8. The trestles were in place at least as early as 1930. Defendant's SOF, at ¶3. At the time the trestles were replaced, Bud Guyot owned all of the property now owned by plaintiffs. Defendant's SOF, at ¶¶ 5, 9. The record indicates that Guyot settled with defendant for damage to the property in question at the time the trestles were replaced. Plaintiff's Response to Motion for Summary Judgment, Ex. 2.

Plaintiffs' homes are built in a 100-year flood plain in which federal regulations require municipalities to ensure that structures have floor elevations high enough to avoid a 100 year flood. Defendant's SOF, at ¶¶ 22. Although federal regulations require a detailed hydrology study to determine the base flood elevation before a community participating in the National Flood Insurance Program can permit development, the City of Beebe failed to follow the regulations when it issued building permits for plaintiffs' homes. Defendant's SOF, at ¶14. Consequently, plaintiffs' homes were built either at or below the 100 year flood plain elevation. Defendant's SOF, at ¶ 22.

The development of plaintiffs' homes began in 1998 and the property was first flooded in 2001. Defendant's SOF, at ¶ 11,23. Plaintiffs' homes were flooded by heavy rains in October and December 2009 and again in May of 2011. Defendant's SOF, at ¶¶ 15-20. Plaintiffs filed this lawsuit seeking compensatory and punitive damages for negligence, nuisance, and trespass, and defendant now moves for summary judgment. Defendant's motion for summary judgment is denied as to plaintiffs' claims of negligence, nuisance, and

trespass; however, defendant's motion for summary judgment is granted as to plaintiffs'

claims for punitive damages.

## II. SUMMARY JUDGMENT STANDARD

Summary judgment is proper if, after viewing the evidence in the light most favorable

to plaintiffs, no genuine issues of material fact exist and defendant is entitled to judgment as

a matter of law. *Nelson v. Corr. Med. Servs.,* 533 F.3d 958, 961 (8th Cir. 2008). Plaintiffs

cannot survive the motion for summary judgment merely by pointing to disputed facts; the

facts in dispute must be material to the outcome of the case. *Anderson v. Liberty Lobby, Inc.*,

477 U.S. 242, 247–48 (1985). If the facts alleged by plaintiffs, when viewed in the light most

favorable to their case, would not allow a reasonable jury to find in their favor, then summary

judgment should be granted in favor of defendant. *Bloom v. Metro Heart Group of St. Louis,*

*Inc.*, 440 F.3d 1025, 1029 (8th Cir. 2006).

## III.  DISCUSSION

Summary judgment is granted as to punitive damages and denied as to all other issues.

A.      Causation

Defendant's motion for summary judgment asserts that plaintiffs have not produced

any "admissible" evidence showing that the removal of the trestles and construction of the

embankments proximately caused their homes to flood is denied.  Defendant asserts that

expert testimony is necessary to prove causation because Arkansas courts have long held that

laymen cannot opine on issues of hydrology or the cause of floods.  Defendant further argues

that summary judgment is appropriate because plaintiffs have failed to produce expert testimony or designate any experts who will testify at trial.

Whether expert testimony is necessary cannot be determined until the testimony of the witnesses has been heard.  This is true because lay witness testimony is probative of causation insofar as the witnesses have observed the phenomena to which they are testifying. *See Herriman v. United States*, 8 Cl. Ct. 411, 420 (1985). Complex factual issues, however, will turn on expert testimony. *Id.*  Plaintiffs represent that they have knowledgeable lay witnesses who can testify as to the issue of causation based on their own personal observations.   If the testimony offered at trial involves complex issues of flooding and hydrology, then plaintiffs' lay witnesses will be insufficient and a motion for judgment as a matter of law will be taken up at the close of the plaintiffs' case.  If the testimony offered at trial recounts the history and characteristics of the flooding of plaintiffs' homes, as observed by plaintiffs' lay witnesses, then no expert testimony will be necessary.  Summary judgment, however, is inappropriate and is therefore denied.

B.      Statutes of Repose and Limitations and Recurring Claims

Summary judgment is denied on defendant's assertion that plaintiffs' claims are time barred by the Arkansas statutes of repose and limitations, and because plaintiffs are attempting to recover for recurring claims.

### 1. Statute of Repose

Defendant argues that Arkansas has a five-year statute of repose for damages caused

by "any deficiency in the design, planning, supervision, or observation of construction or the

construction and repair of any improvement to real property."  Ark. Code Ann. § 16-56-

112(a).  Defendant cites a number of cases in support of its position that construction of

railroad embankments are permanent improvements to real property and, thus, subject to the

five-year statute of repose.  *See Missouri Pac. R.R. Co. v. Neal et al.*, 208 S.W.2d 176 (Ark.

1948); *McAllister et al. v. St. Louis, I.M. & S. Ry. Co.*, 154 S.W. 186 (Ark. 1913); *St. Louis,

I.M. & S. Ry. Co. v. Morris*, 35 Ark. 622 (Ark. 1880).

Plaintiffs, however, argue they are not suing for negligent construction; rather they

are suing for negligence, trespass, and nuisance damages resulting from defendant's violation

of its "ongoing duty to maintain its railroad trackbeds in such a way as to provide adequate

drainage."  Brief in Support of Plaintiffs' Response to Defendant's Motion for Summary

Judgment.  This ongoing duty, plaintiffs argue, is set forth in Ark. Code Ann. § 23-12-204

which requires railroads to "effectually drain their respective roadbeds in all cases where the

lack of drainage has been produced by the construction of the road[.]"  Summary judgment

is denied because there are material issues of fact in dispute as to whether plaintiffs' damages

were caused by defendant's violation of its ongoing duty to drain its roadbeds.

## 2. *Statute of Limitations*

Defendant argues summary judgment should be granted because plaintiffs' claims are

barred by Arkansas's three year statute of limitations applying to recoveries for damages to

real property.  Defendant again cites *McAllister, Morris*, and *Neal* in support of its

proposition that the embankment in question is permanent and the statute of limitation began to run once construction of that embankment was complete.  Defendant also argues that plaintiffs' predecessor in interest knew that the property would flood when the railroad built the embankment and therefore the statute of limitations started running at that time and that plaintiffs' claims were extinguished when their predecessor accepted a settlement from defendant.

Plaintiffs cite *Lhotka v. United States* in support of their position that their injuries occurred when the land flooded in 2009, not when the trestles were removed.  114 F.3d 751 (8th Cir. 1997).  Plaintiffs also cite *State v. Diamond Lakes Oil Co.* in support of their position that the "discovery rule" provides that a cause of action begins to accrue when "plaintiff discovers or in the exercise of reasonable diligence should have discovered not only that he has been injured but that his injury may have been caused by the defendant's conduct."  66 S.W. 3d 613, 617 (Ark. 2002).  Plaintiffs also point out that *Diamond Lakes* held that if there is a doubt as to the applicability of the statute of limitations, it should be resolved in favor of plaintiffs and the beginning of the occurrence is sometimes a question of law and sometimes a question of fact for the jury.  *Id.* at 616-17.

Summary judgment is denied because plaintiffs' cause of action is based on a statutorily defined ongoing duty to maintain proper drainage.  Further, a disputed issue of fact remains as to the date that the statute of limitations began to run.

### 3.  *"Recurring Claims"*

Defendant's motion for summary judgment arguing that plaintiffs' claims are for recurring damages and therefore not recoverable is denied.  Defendant asserts that the original injuries to plaintiffs' property occurred in 1972 and 1980 and that Guyot, plaintiffs' predecessor in interest, settled all claims with defendant, thus extinguishing any claims that plaintiffs may have.  Plaintiffs, however, are not seeking to recover damages for the injuries suffered by Guyot.  Plaintiffs are seeking to recover damages they suffered as a result of defendant's failure to maintain adequate drainage in a manner that would prevent the flooding of their property as required by Arkansas law.

C.   Preemption

Defendant's motion for summary judgment arguing that plaintiffs' claims are preempted by the Interstate Commerce Commission Termination Act of 1995 ("ICCTA") and that the Surface Transportation Board ("STB") has jurisdiction is denied.  Defendant argues that the ICCTA creates a single federal scheme for railroad regulation to keep railroads from being mired in individual states' laws.  Defendant argues that section 10501 of the ICCTA gives the STB exclusive jurisdiction over rail transportation through its express preemption provision.  Defendant also cites a number of cases supporting its argument that Congress intended a broad statement of preemption over all state regulatory authority over railroad operations. Further, defendant argues, it is clearly under the jurisdiction of the STB as it is a "rail carrier" and this involves "transportation" as it involves "property, ... or equipment of any kind related to the movement of passengers or property, or both by rail[.]" 49 U.S.C.

§ 10102(9)(A).  Furthermore, defendant argues the ICCTA preempts state law claims based

on construction or maintenance of railroad tracks or supporting structures.  Finally, defendant

argues this action would constitute a regulation of rail transportation as the cost of repairing

their bridges would constitute an unreasonable burden on interstate commerce.

There are three circumstances in which a state law or regulation is preempted by

federal law: 1) when Congress makes its intent known through explicit statutory language,

2) when federal regulation of a field is so pervasive or the federal interest is so dominant that

an intent to occupy the entire field can be inferred, and 3) when it is impossible for a party

to comply with both state and federal law.  *English v. Gen. Elec. Co.*, 496 U.S. 72, 78-79

(1990). Neither of these circumstances apply here.  Furthermore, none of the cases cited by

defendant apply because they involve direct regulatory actions on the actual operations of

railroad companies.  *See CSX Transp., Inc. v. Georgia Pub. Serv. Comm'n*, 944 F. Supp.

1573, 1575 (N.D. Ga. 1996); *Dakota, Minn. & Eastern R.R. Corp. v. State of South Dakota*,

236 F. Supp. 2d 989, 996-99 (D.S.D. 2002); *Wisconsin Central LTD v. The City of*

*Marshfield*, 160 F. Supp. 2d 1009, 1011 (W.D. Wis. 2000); *Friberg v. Kansas City S. Ry.*

*Co.*, 267 F.3d 439, 440-41 (5th Cir. 2001).  Direct regulatory action on defendant's

operations is not at issue here.  Thus, defendant's motion for summary judgment is denied.

D.     Duty

Defendant moves for summary judgment arguing that it had no duty to prevent the

flooding of plaintiffs' homes for several reasons.  First, the homes were constructed twenty

to thirty years after the trestles were replaced.  Second, defendant had no duty to prevent

flooding in the 100 year flood plain in times of extraordinary rain.  Third, defendant had no

duty to warn plaintiffs of the danger of building within that 100 year flood plain.

As addressed above, plaintiffs' negligence claim rests on defendant's statutorily

defined duty to maintain drainage.  Whether defendant violated that duty, thus causing the

damages suffered by plaintiffs, is an issue for the fact-finder and is not an issue that should

be dismissed on summary judgment.  Summary judgment is therefore denied.

E.      Punitive Damages

Defendant's motion for summary judgment on the issue of punitive damages is

granted.  The record is devoid of any facts showing that "defendant intentionally pursued a

course of conduct for the purpose of causing injury or damage" to plaintiffs.  Ark. Code Ann.

§ 16-55-206.  The record shows that, at most, plaintiffs may be able to establish that

defendant's actions were negligent.

F.      Evidence as to Diminution in Value

Summary judgment is denied on defendant's assertion that plaintiffs have no

admissible evidence supporting a claim for diminution in value.  Although defendant argues

to the contrary, expert testimony is not required to prove that the value of plaintiffs' property

has been diminished.  A landowner is permitted to give opinion testimony as to the

diminished value of his property when he demonstrates an "intimate knowledge of his own

property." *Coffelt v. Arkansas State Highway Comm'n*, 686 S.W.2d 786, 788 (Ark. 1985);

*see also St. Louis San Francisco Ry. Co. v. Manning*, 26 S.W.2d 579, 580 (Ark. 1930) (landowners may give opinion testimony as to the amount of damage to their property if they explain their means and opportunity for knowing the value of the land). Therefore, the fact-finder must weigh plaintiffs' testimony against the testimony provided by defendant to determine whether the value of plaintiffs' property has been diminished.

G.      Standing of Plaintiffs Winters and Horness

Defendant moves for summary judgment as to plaintiffs Kay and Thaddeus Winters and Greg Horness arguing that they lack standing because they refused to repair their homes after the flood, quit making mortgage payments, and their homes were sold in a foreclosure sale. Although it is unclear what damages were in fact suffered by these plaintiffs, it seems that they indeed owned homes that were flooded and therefore have standing to sue. For this reason, summary judgment is denied.

H.      Plaintiff Griffin's Compliance with Discovery Order

Defendant moves for summary judgment against plaintiff Keith Griffin asserting that Griffin has failed to produce discovery in violation of the May 9, 2011, discovery order. [Doc. No. 19]. There is a dispute as to whether the documents compelled by that order were produced and therefore summary judgment is denied. Defendant is, however, directed to raise this issue in pretrial and present the necessary information and if it is determined that Griffin has failed to comply, this request may be reconsidered.

I.      Standing of all Plaintiffs

Finally, defendant moves for summary judgment against all plaintiffs asserting that neither has standing because neither owned the property in question at the time of the original injury. That argument has been address above and is denied.

## IV. CONCLUSION

For the reasons set forth above, defendant's motion for summary judgment [Doc. No. 28] is DENIED. Defendant's second motion for summary judgment [Doc. No. 38] is GRANTED as to plaintiffs' claims for punitive damages and DENIED as to all other claims.

IT IS SO ORDERED this 6th day of September 2011.

_____
UNITED STATES DISTRICT JUDGE